THE VALLEY FORGE. THE EAGLE HILL. THE GILBERTON. THE KEYSTONE.

(Circuit Court of Appeals, Third Circuit. June 17, 1903.)

No. 18.

1. COLLISION—TUG WITH TOWS AND STEAMSHIP MEETING—CHANGE OF SIGNAL.

Evidence considered, and *held* to sustain a finding of the trial court that a tug which was passing up the Delaware river in the evening, with three tows abreast, was solely in fault for a collision with a steamship passing down, on the ground that after an exchange of proper signals for passing to the starboard she suddenly changed her signal and course, and attempted to pass on the starboard side of the steamship, when the vessels were so near together that the latter could not avoid the collision, although she did all that was possible to that end by at once giving alarm signals and reversing.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

In Admiralty. For opinion below, see 107 Fed. 999.

John G. Lamb, for appellant.

John F. Lewis, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. These are cross-libels, in which liability for a collision between the steamer "Carisbrook" and the steam tug "Valley Forge" is charged by each libelant upon the other. From a careful examination of the testimony, the relevant facts appear to be as follows:

The steamer "Carisbrook," whereof James Hummel was master, hailed from the port of Glasgow, Scotland, and was of 1,350 tons register. Late in the afternoon of December 9, 1898, she started from the port of Philadelphia, and was bound down the Delaware river on a voyage to Amsterdam, carrying a cargo of general merchandise. Between half past 7 and 8 o'clock in the evening, while the

¶ 1. Signals of meeting vessels, see note to Union S. S. Co. v. Erie & W. Transp. Co. et al., 30 C. C. A. 630.

steamer was on what is called the "Tinicum Island" range, which runs about east and west, and nearing its junction with the "Schooner Ledge" range, running about northeast and southwest, she observed the "Valley Forge" coming up the river somewhat below Chester, with a tow of three barges abreast, as indicated by her lights. When the "Carisbrook" arrived at the junction of the two ranges, and had turned down, or was about to turn down, on the Schooner Ledge range, the "Valley Forge" was opposite Market street, in the city of Chester, about three-quarters of a mile away, on the said range, or a little to the westward on a course parallel thereto. While the steamer and tug were in these relative positions, according to the weight of testimony, the "Carisbrook" blew one blast of her whistle, signifying that she would keep to starboard, according to the sailing rules, and pass the tug port to port. The "Valley Forge" promptly accepted, and answered with an assenting signal of one blast. The "Carisbrook" was then justified in assuming that the "Valley Forge" understood the situation as it was understood by the "Carisbrook," and properly made her preparations to pass to the right and to the westward of the tow. Within a very short time (the captain of the tug saying almost immediately, and those on the "Carisbrook" saying within a few minutes), the "Valley Forge" made a cross-signal of two blasts of her whistle, indicating that she would go to the westward of the "Carisbrook," and she accordingly put her wheel to starboard and sheered over towards the western shore of the river. The pilot and officers of the "Carisbrook" heard this signal, and observed immediately that the "Valley Forge" was showing her green light and shutting out her red.

It is at this point that the testimony is somewhat contradictory. The captain of the "Valley Forge" testified that, at the time the answering signal of one blast was blown, it was intended only to signify that the signal of the "Carisbrook" had been heard and understood; that immediately the cross-signal of two blasts was given, to indicate that the first signal could not be accepted, and that the "Valley Forge" would insist on passing to the westward, and that the "Carisbrook" then had time to accept said signal and pass to the eastward of the "Valley Forge." He further alleges that he was constrained to this course by the facts, first, that a tug, towing a three-masted schooner, was coming down the river above him, on the Schooner Ledge range, and second, that a steamer was anchored on or near said range to the eastward, about half way between Market Street Wharf and the junction of the two ranges, and that, therefore, there was not room for him to pass with his tow to the eastward, as suggested by the signal of the "Carisbrook."

On the other hand, the pilot, captain and second officer of the "Carisbrook," who were on the bridge, testified to a different situation. The pilot on the steamer testifies that, when the "Carisbrook" blew one blast of her whistle, and was answered by the "Valley Forge" with one blast, they were from a half to three-quarters of a mile apart; that immediately thereafter, the "Carisbrook" went about half a point to the westward of the Schooner Ledge range, and that the "Valley Forge," which, when the first whistle was blown, was

124 F.—13

showing red and green lights, then shut out the green and showed·
red, indicating that she was acting in accordance with the signal given
and received.    That about two minutes thereafter, and when the ves-
sels were about a quarter of a mile apart, the said pilot testifies that
he heard two blasts from the "Valley Forge," which was then show-
ing her green light and shutting out the red; that at this time, the
"Carisbrook" was to the westward of the ranges, and could not pos-
sibly have gotten her head around, so as to have cleared the barges;
that she, therefore, immediately sounded one whistle and then the
danger signal of three whistles, and the signal for stop and full speed
astern.    The "Valley Forge," according to all the testimony, kept
on her course to the westward, without stopping or slowing, the
captain alleging as a reason therefor, that, the flood tide being with
him, the tow would have drifted in on him had he stopped.    The pilot
and officers of the "Carisbrook" all testified that it was impossible to
have avoided the collision, after hearing the signal of two blasts from
the "Valley Forge," unless, possibly, the "Valley Forge" had stopped.

Such being the difference in the statements of those on board the
steamship and the tow respectively, fortunately there is the disinter-
ested testimony of the pilot and officers of the steamship "Corean,"
which was lying at anchor a little to the eastward of the Schooner
Ledge range, and nearly midway between the junction point of the
two ranges and Market Street Wharf, at Chester, somewhat nearer
the latter than the former.    The captain of the "Corean" testifies
that the "Carisbrook" was turning around the bend below "Tini-
cum" when he first noticed her.    As his steamship was riding at
anchor, with her bow down stream, the "Carisbrook" was on the
starboard quarter, more astern than on the quarter.    "Indeed, she
was almost right astern when I first saw her."    He heard the signal
of one blast of the whistle of the "Carisbrook," which was imme-
diately replied to by one whistle from the "Valley Forge," which
was below him and on his starboard bow.    She was showing her green
light and was about half a mile away.    He thinks the steamer and
the tug were close on to a mile apart when the first signal of one
blast was given.    The chart, however, corroborates the weight of the
testimony, that they were about three-quarters of a mile apart.    The
next signal of two blasts of the whistle from the "Valley Forge,"
he testifies, was given when the barges of the tow were nearly abreast
of the bridge of the "Corean," where he was standing, and about half
the length of his ship away from his starboard side, which would be
about 175 to 200 feet; that immediately on blowing the two blasts,
the tug starboarded her helm; that when these two whistles were
blown, there was not the slightest danger of either the tug or the
barges colliding with the "Corean."    At the time the tug blew the
two whistles, he thinks the "Carisbrook" was to the westward of the
range; that shortly after the blast of two whistles from the tug, the
"Carisbrook" blew three whistles, meaning that she was going full
speed astern; that the tug had plenty of time to alter her course to
starboard and clear the steamer, when the steamer gave the signal
of full speed astern; and that the "Carisbrook" could not, in his
opinion, have done anything other than was done, to avoid the colli-

sion; that the collision occurred a minute or probably less after the two whistles were blown by the "Valley Forge." McKillip, second officer of the "Corean," was on deck and was watching these two vessels, as he was waiting until they had passed to heave up anchor and get under way. ` He says his vessel was lying to the eastward of the Schooner Ledge range, (of which fact he is certain, because the upper range light opened to the eastward of the lower range light; he therefore could not have been mistaken). He heard the signals on both vessels, and confirms the testimony of the captain as to all important points. He heard the tug boat blow the two whistles, when nearly abreast of the "Corean," which was answered by one blast from the "Carisbrook," and immediately thereafter by the danger signal of three. He thought the steamer was to the westward of the ranges at that moment, and that nothing could have been done by her to have avoided the collision. They were too close. Both officers say that they were astonished to hear the two whistles from the tug, and see her starboarding her helm, as they were both of opinion that a collision was then inevitable. Kelley, the pilot on the "Corean," corroborates this testimony, and says that the "Carisbrook" and "Valley Forge" were about three-quarters of a mile apart when the "Carisbrook" blew one whistle and the "Valley Forge" answered it. All three of these witnesses testify that there was nothing in the river to prevent the "Valley Forge" and the barges keeping to the eastern side of the channel; that no schooner towed by a tug down the river was between the "Carisbrook" and "Valley Forge" at the time the first whistle was blown; that such a tow had passed down some time before, and had passed the "Valley Forge" and was below Chester when the first whistle was blown. The second mate of the "Valley Forge," who was at the wheel, testifies that there was no other vessel than the "Corean" between the "Valley Forge" and the "Carisbrook," when the "Valley Forge" was opposite Market Street Wharf, at Chester, as was charged in the libel and testified to by the captain, and when asked why, after the "Valley Forge" blew one whistle, she did not go to starboard, as indicated by the whistle, answered, "I do not know."

Believing that the facts thus summarized are established by the weight of testimony, the conclusion inevitably follows that the "Valley Forge" was in fault, and that the "Carisbrook" did all that could be required under the circumstances to avoid the collision that occurred. If the captain of the "Valley Forge" gave the cross-signal of two whistles, and starboarded his helm to go to the westward, under the mistaken belief that there was no room for him to pass to the eastward, he was liable, both on the ground that he mistook the situation, and that, even supposing that he was not mistaken, he erred in giving the signals that were given from his vessel. Under the rules adopted by the board of supervising inspectors, and approved by the Secretary of the Treasury, in 1899, he should not, after accepting the signal of one blast of the whistle of the "Carisbrook," and returning it, have given a cross-signal of two whistles, as he did. The duty imposed by rule 3 of the rules just referred to, require that he should, if he doubted his ability to pass to the eastward, have

slowed down and given four or more rapid blasts of his whistle, to indicate that he was in doubt, and that there was danger. The cross-signal which he did give, is peremptorily forbidden by the rule referred to, and produced a situation of doubt and danger, in which the "Carisbrook" would have been free from liability, even had. she, under the circumstances, acted upon a mistaken judgment as to the proper course to pursue. The weight of the testimony, however, convinces us that the "Carisbrook" acted in accordance with those rules of prudence, which should govern a careful and skillful navigator, and was without blame in the premises; and for these reasons we think the decree of the court below in each case was right, and should be affirmed.